UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ELTON KEITH MCCOMMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 16-1211-JDT-cgc |
| | ) |
| CYNTHIA CROOM, ET AL. | ) |
| | ) |
| Defendants. | ) |

ORDER PARTIALLY DISMISSING AMENDED COMPLAINT AND DIRECTING
THAT PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS

On July 20, 2016, Plaintiff Elton Keith McCommon ("McCommon"), who is currently incarcerated at the Morgan County Correctional Complex ("CCCX") in Wartburg, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The complaint concerns McCommon's previous incarceration at the Haywood County Jail (Jail) in Brownsville, Tennessee. In an order issued July 21, 2016, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) However, because the entire filing fee was subsequently paid on August 31, 2016 (ECF No. 6), the Court set aside the fee assessment (ECF No. 7). On March 22, 2015, the Court denied McCommon's motion to appoint counsel and dismissed the complaint, but also granted leave to amend. (ECF No. 11.) On April 13, 2017, McCommon filed an amended complaint. (ECF No. 13.) Pursuant to the amended complaint, the Clerk shall record the Defendants as Officer Cynthia Croom, former Haywood County Sheriff Melvin Bonds, attorney Michael Banks, and

Assistant Jail Administrator Cedric Tyus. Defendants are sued in their individual and official capacities.

McCommon alleges that when he discovered that his attorney, Defendant Banks, was also representing the agency involved in his case[1] he filed a complaint with the Tennessee Board of Professional Responsibility (TBPR). (ECF No. 13 at 5.) When Banks learned of the complaint, he allegedly threatened McCommon by stating he had friends at the Jail, both employees and inmates, so McCommon should drop the complaint. (*Id.*) When McCommon refused to drop the complaint, he was attacked and beaten by another Jail inmate, David Cage, who told McCommon that he better drop the complaint against Banks. (*Id.*) As a result of that altercation, McCommon was charged with a disciplinary violation for fighting. (*Id.*)

McCommon further alleges that Defendant Banks was a member of the Disciplinary Board at McCommon's disciplinary hearing. (*Id.*) At that hearing, Banks allegedly threatened McCommon with physical harm if McCommon continued to pursue the complaint against him and also voted to find McCommon guilty of fighting. (*Id.* at 6.) As a result of those threats, McCommon asked for and was granted protective custody. (*Id.*)

McCommon alleges that after he was placed in protective custody, Defendant Croom, who controlled the cell locks, deliberately unlocked McCommon's cell and allowed inmate Lawrence Tyus, a relative of Defendant Cedric Tyus, to enter McCommon's cell for the purpose

---

[1] While McCommon refers to Defendant Banks in the amended complaint as "his" attorney (ECF No. 13 at 5), he has also written "Co attorney" above Banks's name, (*id.*). Likewise, it appears that Banks is also described in the original complaint as the "Co attorney". (ECF No. 1 at 2.) While it would be very unusual for an official County Attorney to also represent criminal defendants in that same county, at this stage of the proceeding the Court declines to speculate on whether McCommon's description of Banks as the "Co attorney" is accurate.

of beating and stabbing McCommon. (*Id.* at 7.) McCommon contends that while Lawrence Tyus was beating him, Defendant Croom told McCommon that he had better stop the complaints against Defendant Banks or next time he would be killed. (*Id.*) The assault by Lawrence Tyus allegedly resulted in significant injuries to McCommon, including damaged ribs, bleeding from being stabbed in the ear, and black eyes. (*Id.* at 8.)

While McCommon was at the clinic after the assault, Defendant Croom allegedly allowed Lawrence Tyus to steal McCommon's personal belongings from his cell as payment for the assault. (*Id.* at 7.) McCommon further contends that Defendant Cedric Tyus arranged for Lawrence Tyus to be released from the Jail as a reward for the assault on McCommon. (*Id.* at 8.)

McCommon alleges the Defendants conspired to violate and did violate his constitutional rights, inflicting both physical injuries and emotional pain. (*Id.*) He seeks both compensatory and punitive damages.

The legal standards for assessing the claims in an inmate's complaint were set forth in the previous order (ECF No. 11 at 2-5) and will not be reiterated here.

McCommon's claims against the Defendants in their official capacities are construed as claims against Haywood County. When a § 1983 claim is made against a municipality or county, a court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of McCommon's official capacity claims.

A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy*

*v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*,

No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. *Raub v. Correctional Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The allegations of the complaint fail to identify an official policy or custom of Haywood County which caused injury to McCommon.

The only allegation in the amended complaint concerning Defendant Bonds is that McCommon "complained" to him in an unspecified manner but received no response. (ECF No. 13 at 3.) However, McCommon has no claim against Defendant Bonds merely because of his position as the Sheriff at the time of the events at issue or his failure to respond to a complaint. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held

5

liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint ordinarily does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

For purposes of screening, the Court finds that McCommon has alleged the following plausible claims under §1983: (1) a claim that Defendant Croom failed to protect McCommon against the attack by inmate Tyus; (2) a claim that Defendants Croom and Banks retaliated against McCommon for filing a complaint against Banks with the TBPR; and (3) a claim that Defendants Croom, Banks and Cedric Tyus conspired to violate McCommon's rights.

Therefore, the Court DISMISSES McCommon's official capacity claims against all of the Defendants and the individual capacity claims against Defendant Bond for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Process will be issued for Defendants Croom, Banks and Tyus in their individual capacities.

It is ORDERED that the Clerk shall issue process for Defendants Croom, Banks and Tyus and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Croom, Banks and Tyus pursuant to Federal Rule of Civil Procedure 4(e) and

Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that McCommon shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Croom, Banks and Tyus or on any unrepresented Defendant. McCommon shall make a certificate of service on every document filed. McCommon shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[2]

McCommon shall promptly notify the Clerk, in writing, of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[2] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at https://tnwd.courts.gov/pdf/content/LocalRules.pdf.